[Cite as *State v. Smith*, 2023-Ohio-327.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29326 |
| | : | |
| v. | : | Trial Court Case Nos. 2021 CR 01194; |
| | : | 2021 CR 02263 |
| RICK SMITH | : | |
| | : | (Criminal Appeal from Common Pleas |
| Appellant | : | Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on February 3, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by RICKY L. MURRAY, Attorney for Appellee

ANDREW R. BARNES, Attorney for Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Rick Smith appeals from the trial court's revocation of community control and

its imposition of consecutive eight-month prison sentences in two consolidated cases.

{¶ 2} Smith contends the trial court's two judgment entries are defective because

they failed to mention that he "entered a plea to the charges." He similarly claims the trial court failed to journalize his admission to violating community control and its finding on that admission. Smith also argues that the trial court improperly elicited his admission to violating community control with a false promise that he would be placed in a residential treatment program. He further asserts that the trial court failed to acknowledge a revocation of his admission at sentencing. Finally, Smith contends the trial court erred in imposing consecutive sentences without making the required statutory findings.

{¶ 3} We see no defect in the trial court's two judgment entries revoking community control and sentencing Smith to prison. We also see no promise by the trial court that he would be sent to a residential treatment program. Nor does the record reflect an attempt by Smith to withdraw his admission at sentencing. Although the trial court did not orally make all of the statutory findings required to impose consecutive sentences, Smith's completion of his prison term renders the issue moot. Accordingly, the trial court's judgments will be affirmed.

## I. Background

{¶ 4} Smith pled guilty to a charge of aggravated drug possession in Montgomery C.P. No. 2021-CR-1194. He later pled guilty to another charge of aggravated drug possession in Montgomery C.P. No. 2021-CR-2263. The first case involved his possession of methamphetamine on April 7, 2021. The second case involved his possession methamphetamine on July 4, 2021.

{¶ 5} On September 2, 2021, the trial court sentenced Smith to community-control sanctions in both cases. Three weeks later, it issued notices of an alleged community-

control violation and ordered him to appear at a hearing to admit or deny violating community control by threatening the staff at a halfway house. During that hearing, which took place on October 20, 2021, defense counsel advised the trial court that Smith would admit violating community control by being removed from the "Turtle Creek" residential treatment program. Defense counsel added a caveat that Smith would enter his admission with an understanding that he would be screened for participation in an alternative treatment program. The following exchange then occurred:

> THE COURT: All right. Mr. Smith, do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: We're going to try to find a place. No one makes any promises, but we'll see what's out there, and if none of that works, I'm probably inclined to send you to prison. I'm telling you that up front. So but I'm going to look at these other options. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. Mr. Smith, do you admit that you violated the terms and conditions of your community control sanctions?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Based on your admission, the Court finds that the State has proven by a preponderance of the evidence that you have, in fact, violated the terms and conditions of your community control sanction.

October 20, 2021 Transcript at 3.

{¶ 6} Smith returned to court on November 10, 2021 for disposition on the

community-control violation. At that time, the trial court noted that he had been screened for the "MonDay" and the "S.T.A.R." programs and had been found unsuitable for them. Defense counsel then acknowledged that Smith was "a hard candidate to place based off of a certain prior conviction[.]" Defense counsel urged the trial court to impose a lower-end prison sentence if it found incarceration necessary. Smith then spoke and stated that he was "under the impression" he had been accepted into a "Volunteers of America" program. Smith also claimed that his probation officer had characterized his community-control violation as being "not an issue" at the time of the violation. He also suggested that he did not make any threats while in the Turtle Creek program. The trial court responded that its information contradicted what Smith was saying. It then revoked community control in both cases and imposed consecutive eight-month prison terms with jail-time credit and discretionary post-release control.

{¶ 7} The trial court journalized Smith's sentence in separate judgment entries filed in both cases. Both judgment entries stated that he had appeared in court on November 10, 2021 "for having violated the conditions of HIS community control granted on SEPTEMBER 01, 2021 after HAVING ENTERED A PLEA OF GUILTY TO the offense of AGGRAVATED POSSESSION OF DRUGS," a fifth-degree felony. Both judgment entries imposed eight-month prison terms consecutive to each other with the required statutory findings. They also awarded jail-time credit and addressed discretionary post-release control.

## II. Analysis

{¶ 8} Smith advances the following five assignments of error:

1. JOURNAL ENTRY FOR SENTENCING FAILED TO CONTAIN PLEA

2. TRIAL COURT FAILED TO JOURNALIZE EVIDENTIARY HEARING

3. TRIAL COURT ELICITED ADMISSION WITH A PROMISE

4. TRIAL COURT FAILED TO ACKNOWLEDGE REVOCATION OF ADMISSION

5. TRIAL COURT ABUSED ITS DISCRETION FOR SENTENCING CONSECUTIVE SENTENCES

## A. Adequacy of Judgment Entries

{¶ 9} In his first two assignments of error, Smith challenges the adequacy of the trial court's judgment entries revoking community control in both cases and sentencing him to prison.

{¶ 10} In his first assignment of error, he contends the judgment entries were defective because they failed to set forth his "guilty plea" to the community-control violation. In his second assignment of error, Smith references the trial court's failure to "journalize the evidentiary hearing" where he admitted the community-control violation. His specific argument, however, appears to be that the trial court's journal entries failed to set forth its "verdict" or finding on his "guilty plea" to the community-control violation.

{¶ 11} Both assignments of error are predicated on Crim.R. 32(C) and *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163. Under Crim.R. 32(C), a judgment of conviction must include "the fact of conviction and the sentence." The rule provides that it also must be signed by the judge and entered on the journal by the clerk. In *Baker*, the Ohio Supreme Court interpreted Crim.R. 32(C) and held that a valid

judgment of conviction must contain "(1) the guilty plea, the jury verdict, or the finding of the court upon which the conviction is based; (2) the sentence; (3) the signature of the judge; and (4) entry on the journal by the clerk of court." *Id.* at the syllabus.

{¶ 12} The Ohio Supreme Court later modified *Baker* in *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142. The *Lester* court held that that "[a] judgment of conviction is a final order subject to appeal under R.C. 2505.02 when it sets forth (1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk." *Id.* at the syllabus. According to *Lester*, a valid final judgment must recite the fact of conviction but need not identify the manner of conviction (i.e., guilty plea, no-contest plea with a finding of guilt, bench trial, or jury trial). The *Lester* court reasoned that the "manner of conviction" involved a matter of form rather than substance.

{¶ 13} In the present case, the trial court's two November 12, 2021 judgment entries imposing eight-month prison terms upon the revocation of Smith's community control satisfied *Baker* and *Lester*. Both judgment entries recited the fact of Smith's conviction pursuant to a guilty plea to a fifth-degree-felony drug charge. They also set forth his eight-month prison sentence, they were signed by the judge, and they were journalized by the clerk.

{¶ 14} Smith nevertheless maintains that the judgment entries were defective because they omitted his "guilty plea" to a community-control violation and the trial court's "verdict" or finding on his guilty plea to violating community control. But an admission to a community-control violation is not analogous to a guilty plea to a criminal charge. For

one thing, "[c]ommunity control violation proceedings are not equivalent to criminal prosecutions." *State v. Black*, 2d Dist. Montgomery No. 24005, 2011-Ohio-1273, ¶ 12. And unlike a guilty plea, a defendant's violation of the terms of community control "does not result in a conviction." *Id.* at ¶ 13. The imposition of a prison sentence for a community-control violation is simply a consequence of the original underlying conviction. *Id.* For these reasons, we conclude that the trial court's two judgment entries were not judgments of conviction under Crim.R. 32(C) with respect to Smith's admission to a community-control violation. The entries were judgments of conviction under Crim.R. 32(C) with respect to his conviction and sentence on the underlying drug charges. On that issue, they satisfied the requirements of Crim.R. 32(C).

{¶ 15} We note too that the October 20, 2021 hearing transcript does reflect Smith's admission to violating community control, and the trial court's two judgment entries stated that he had appeared in court on November 10, 2021 for sentencing "for having violated the conditions of HIS community control granted on SEPTEMBER 01, 2021 after HAVING ENTERED A PLEA OF GUILTY TO the offense of AGGRAVATED POSSESSION OF DRUGS," a fifth-degree felony." Thus, the record does reflect the fact of Smith's violation of his community control.

{¶ 16} Based on the reasoning set forth above, we conclude that the trial court's two November 12, 2021 judgment entries imposing eight-month prison terms upon the revocation of Smith's community control were valid final orders. Accordingly, the first and second assignments of error are overruled.

### B. Eliciting Admission with a Promise

{¶ 17} In his third assignment of error, Smith contends the trial court improperly elicited his admission to violating community control by promising him "probation." More specifically, he claims the trial court made "a future promise of potential placement into a program, without the intention of placing [him] in a program."

{¶ 18} Upon review, we find Smith's argument to be without merit. The trial court explicitly *did not* promise him placement in a program. When accepting his admission to violating community control, it stated: "No one makes any promises, but we'll see what's out there, and if none of that works, I'm probably inclined to send you to prison. I'm telling you that up front."

{¶ 19} Thereafter, at sentencing, the trial court explained that Smith had been screened and rejected for the "MonDay" and the "S.T.A.R." programs and that it was "out of options." Defense counsel did not disagree, acknowledging that Smith was "a hard candidate to place." Defense counsel added that "unfortunately, some incidents have happened at the few places that he would be a candidate to go." While advocating for a lower-end prison term, defense counsel also noted that Smith's jaw previously had been broken while he was at "the VOA," an apparent reference to the Volunteers of America program. Smith then spoke and stated that he was "under the impression" he had been accepted into the Volunteers of America program, but neither he nor his attorney presented the trial court with any actual evidence to support that belief.

{¶ 20} On the record before us, we see no error in the trial court's determination that no viable placement had been found for Smith despite efforts to locate one. In the absence of such a placement, the trial court did not err in revoking community control and

imposing a prison term, just as it had advised Smith it was likely to do when it accepted his admission. The third assignment of error is overruled.

### C. Revocation of Admission

{¶ 21} In his fourth assignment of error, Smith contends the trial court erred in failing to acknowledge that he "revoked" his admission of a community-control violation during the sentencing hearing.

{¶ 22} While acknowledging that he never formally withdrew his admission, Smith claims the trial court should have treated his remarks at the sentencing hearing as an attempted withdrawal of the admission and should have inquired into the matter.

{¶ 23} Upon review, we find Smith's argument to be unpersuasive. As an initial matter, we note again that a community-control revocation proceeding "is not part of a formal criminal prosecution." *State v. Payne*, 12th Dist. Warren No. 2001-09-081, 2002 WL 649403, *2 (April 22, 2002). As a result, the procedures applicable to withdrawing a guilty plea are not applicable to a revocation proceeding. *Id.* at *3.

{¶ 24} In any event, we are unconvinced that Smith even attempted to withdraw his admission. When asked whether he had anything to say, he responded that he was "under the impression" he had been accepted into a "Volunteers of America" program. He also confirmed that the trial court had received a letter he had written to the court. Although neither Smith nor his attorney presented any evidence establishing his acceptance into a Volunteers of America program, Smith's remarks about the program and his inquiry about his letter to the trial court strongly suggest that he intended to proceed with sentencing on his admission to the community-control violation. Smith then

proceeded to inform the trial court about the progress he had made personally. He also reported that his probation officer previously had told him "that the probation violation was not an issue." He then asked the trial court "to side with Parole again on this allegation that there was not a threat down in Turtle Creek."

{¶ 25} Having reviewed Smith's remarks in their entirety, we interpret them as addressing his potential placement in another treatment program and, alternatively, as an attempt to mitigate any prison sentence. The trial court did not err in failing to construe the remarks as an oblique attempt by Smith to withdraw his admission to violating community control. The fourth assignment of error is overruled.

### D. Consecutive Sentences

{¶ 26} Smith's final assignment of error challenges the trial court's imposition of consecutive eight-month prison terms in his two cases. He contends the trial court erred in failing to make all of the statutory findings required by R.C. 2929.14(C)(4).

{¶ 27} "When an offender's community control is revoked and multiple prison terms are imposed for the underlying offenses, the trial court must make the findings under R.C. 2929.14(C)(4) before imposing consecutive sentences at the revocation sentencing hearing." *State v. Artz*, 2d Dist. Champaign No. 2014-CA-34, 2015-Ohio-3789, ¶ 12. Under the statute, the trial court "may require the offender to serve the * * * terms consecutively if [it] finds" that: (1) "consecutive service is necessary to protect the public from future crime" or "to punish the offender" sufficiently; (2) "consecutive [service] [is] not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and (3) at least one of the conditions specified in R.C.

2929.14(C)(4)(a)-(c) applies. Those conditions are:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶ 28}** When revoking Smith's community control and imposing consecutive prison terms, the trial court addressed him and made the following findings at the November 10, 2021 sentencing hearing:

Sir, I am imposing consecutive sentences because I believe they are necessary to protect the public from future crime and to punish the offender. I also believe that the consecutive sentences are not disproportionate to the seriousness of your conduct and to the danger that you pose.

Also, at least two of the multiple offenses were committed as part of one or more course[s] of conduct, and based upon your criminal history, as

well, I'm making these findings. * * *

November 10, 2021 Transcript at 29.

{¶ 29} The foregoing findings suggest that the trial court was attempting to find the circumstances set forth in R.C. 2929.14(C)(4)(b) and (c). But the trial court's findings were incomplete as they omitted significant portions of the statutory language. In its subsequent judgment entries, we note that the trial court did make findings satisfying the course-of-conduct circumstance found in R.C. 2929.14(C)(4)(b).

{¶ 30} Despite the trial court's incomplete oral findings when sentencing Smith on the community-control revocation, we note that he already has served his consecutive prison terms. The Ohio Department of Rehabilitation and Correction's website reflects that with jail-time credit he was released from confinement on July 15, 2022 and placed on post-release control under Adult Parole Authority supervision. As a result, there is no relief we can provide regarding the length of his prison term, which has been completed. Even if we were to find consecutive sentences inappropriate, Smith still would remain on discretionary post-release control. Accordingly, his fifth assignment of error is overruled as moot. *See, e.g., State v. Murphy*, 12th Dist. Clinton No. 2019-11-018, 2021-Ohio-1452, ¶ 6-8 (finding a consecutive-sentence challenge moot where the appellant had served his sentence and had been placed on post-release control).

### III. Conclusion

{¶ 31} Having overruled Smith's assignments of error, we affirm the judgments of the Montgomery County Common Pleas Court.

. . . . . . . . . . . . .

WELBAUM, P.J. and EPLEY, J., concur.